**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| CHARLES M., | ) | |
| | ) | |
| Plaintiff(s) | ) | |
| | ) | |
| vs. | ) | Case No. 2:25-CV-73 SRW |
| | ) | |
| FRANK J. BISIGNANO, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant(s). | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on review of an adverse ruling by the Social Security Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in support of the Complaint. ECF No. 18. Defendant filed a Brief in Support of the Answer. ECF No. 19. Plaintiff did not file a Reply. The Court has reviewed the parties' briefs and the entire administrative record, including the transcripts and medical evidence. Based on the following, the Court will affirm the Commissioner's decision.

I.      **Factual and Procedural Background**

On June 28, 2023, Plaintiff Charles M. protectively filed applications for disability insurance benefits ("DIB") under Title II, 42 U.S.C. §§ 401, *et seq.*, and supplemental security income under Title XVI, 42 U.S.C. §§ 1381, *et seq.*, with an alleged onset date of September 7, 2014. Tr. 183-91. Plaintiff's applications were denied upon initial consideration and reconsideration. Tr. 93-101, 110-16. On January 5, 2024, he requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 117-18.

Plaintiff appeared for a telephonic hearing, with the assistance of counsel, on July 8, 2024. Tr. 33-58. He testified concerning his disability, daily activities, and functional limitations. *Id*. Plaintiff amended his onset date to September 6, 2023 and voluntarily dismissed his DIB application brought under Title II. Tr. 17, 37. During the hearing, the ALJ received testimony from vocational expert John Stephen Dolan. Tr. 53-57. On August 19, 2024, the ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr. 14-32. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. Tr. 181-82. On August 14, 2025, the Appeals Council denied Plaintiff's request for review. Tr. 1-6. Accordingly, the ALJ's decision stands as the Commissioner's final decision.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

## II.    Legal Standard

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the

2

claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a severe impairment "which significantly limits claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion."

3

*Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work which exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are

4

supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

### III.    The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2016, and has not engaged in substantial gainful activity since September 6, 2023, the amended alleged onset date. Tr. 20. Plaintiff has the severe impairments of "cardiac palpitations, sleep apnea, degenerative disc disease, and obesity." Tr. 20-21. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 21-22. The ALJ found Plaintiff had the following RFC through the date last insured:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can lift/carry 10 pounds occasionally and 20 pounds frequently. He must have an option to sit/stand at 30 to 45 minute intervals taking a minute to change position. He should avoid climbing ladders, ropes, or scaffolds but can occasionally climb ramps and stairs, stoop, crouch. He cannot kneel or crawl, and he must avoid hazards such as unprotected heights and dangerous moving machinery, avoid concentrated vibrations, and avoid hot and cold temperature extremes.

Tr. 23.

Plaintiff has no past relevant work. Tr. 27. He has at least a high school education and was born on September 6, 1973, and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. *Id.* The transferability of job skills was not an issue because the Plaintiff did not have past relevant work. *Id.*

Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform, including Mailroom Clerk (*Dictionary of Occupational Titles* ("*DOT*") No. 209.687-026, light work, with 30,000 jobs in the national economy); Courier (*DOT* No. 230.663-020, light work, with 10,000 jobs in the national economy); and Security Guard (*DOT* No. 372.667-038, light work, with 50,000 jobs in the national economy). Tr. 27-28. The ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, since September 6, 2023, through the date of the decision. Tr. 28.

## IV.   Discussion

Plaintiff presents three assignments of error: (1) the ALJ improperly evaluated the State agency medical opinions of Drs. Michael O'Day and Judee Bland; (2) the RFC is not supported by substantial evidence; and (3) the decision lacks a proper "credibility" evaluation. ECF No. 18.

### A.  Medical Opinions

Claims filed after March 27, 2017, like Plaintiff's, require the ALJ to evaluate medical opinions pursuant to 20 C.F.R. § 404.1520c. This provision states the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). Rather, an ALJ is to evaluate the persuasiveness of any opinion or prior administrative medical finding by considering the: (1) supportability of the opinion with relevant objective medical evidence and supporting explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with the plaintiff, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4) specialization; and (5) other relevant factors. 20 C.F.R. § 404.1520c(c).

6

Supportability and consistency are the most important factors; therefore, an ALJ must explain how he or she considered these factors in the decision. 20 C.F.R. § 404.1520c(b)(2). The more relevant the objective medical evidence and supporting explanations presented by a medical source are to *support* his or her medical opinions or prior administrative medical findings, and the more *consistent* medical opinions or prior administrative medical findings are with other medical sources and nonmedical sources, "the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* An ALJ may, but is not required to, explain how he or she considered the remaining factors. *Id. See Brian O. v. Comm'r of Soc. Sec.*, 2020 WL 3077009, at *4-5 (N.D.N.Y. June 10, 2020) ("Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how he or she considered the medical opinions' and 'how persuasive he or she finds all of the medical opinions.'") (quoting § 404.1520c(a), (b), alterations omitted). An ALJ must articulate how persuasive he found all medical opinions and prior administrative medical findings in a claimant's case record. § 404.1520c(b).

On September 20, 2023, Dr. Judee Bland performed a non-examining Physical RFC Assessment based on the relevant medical records then available. Tr. 60-64, 68-72. She opined Plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk with normal breaks for a total of 6 hours in an 8-hour workday; sit with normal breaks for a total of 6 hours in an 8-hour workday; and frequently climb ramps/stairs, ladders/ropes/scaffolds, balance, stoop, kneel, crouch, and crawl. Tr. 68-69. Dr. Bland indicated that Plaintiff should avoid concentrated exposure to extreme cold, heat, vibration, and machinery or height hazards. *Id.* She attributed all of these limitations to "morbid obesity, OSA (obstructive

7

sleep apnea), and mild T spine and L-spine DDD (degenerative disc disease)." *Id.* at 69-70.

Overall, she believed Plaintiff could perform light work. Tr. 72.

Subsequently, on November 7, 2023, Dr. Michael O'Day completed a second Physical

RFC Assessment upon the SSA's reconsideration of Plaintiff's disability claim. He found the

same limitations as Dr. Bland. Tr. 75-80, 84-88.

Analyzing the opinions of the State agency consultants, the ALJ wrote:

[T]he undersigned considered the prior administrative medical findings of the
State Disability Determination medical consultants, who limited the claimant to a
range of light work, with frequent performance of postural maneuvers and
avoidance of concentrated exposure to extreme cold, extreme heat, vibration, and
hazards. *These findings are persuasive, as they are well supported by explanation
and a thorough review of the record. Moreover, the findings are consistent with
the record as a whole, based on the claimant's cardiac history and recent
treatment for back pain, discussed above.*

In an abundance of caution, the undersigned finds that some additional limitations
are warranted. Specifically, he started taking Dic[l]ofenac pain medication and he
maintains an obese weight, which the undersigned finds to reasonably support a
sit and stand option, with greater limitations in the claimant's postural maneuvers.
However, further limitations are not supported. The claimant's treatment for back
pain has been modest, and imaging showed only mild degenerative disc disease.
The claimant had a negative stress and echo testing in February 2022, with
negative EKG findings in June 202[]3. The claimant reported an increase in back
pain after lifting weights later in 2023. Since that time, the claimant has modified
his activity but still goes to the gym. The most recent treatment records, discussed
above, reflect adequate gait and motor function. The claimant's other impairment
are responsive to treatment.

Tr. 25 (internal citations to the record omitted) (emphasis added).

Plaintiff argues that the ALJ's decision "contains only general statements about

supportability and consistency." ECF No. 18 at 5. Plaintiff points to the ALJ's statements in

which the ALJ wrote that the opinions of Drs. Bland and O'Day were "well supported by

explanation" and were "consistent with the record as a whole, based on the claimant's cardiac

history and recent treatment for back pain." *Id.* Plaintiff argues that the ALJ's failure to offer

additional discussion regarding supportability and consistency are reversible error.

Supportability considers the extent to which an examiner's objective findings and evidence support his or her conclusions. *See* 20 C.F.R. § 404.1520c(c)(1). The ALJ determined that the opinions of the examiners were well supported "by explanation and a thorough review of the record." Tr. 25. The ALJ provides no discussion, however, as to the "explanation" the state agency consultative physicians provided to support their assessments. The bare statement that they reviewed the medical record provides no real analysis of the persuasiveness of their opinions. The undersigned has previously determined that the regulatory requirements related to supportability are not satisfied by an ALJ's mere recognition that an opinion was based on the evaluation of Plaintiff's medical history. *See Hirner v. Saul*, 2022 WL 3153720, at *8 (E.D Mo. Aug. 8, 2022). *See also Johnson v. O'Malley*, 2024 WL 1328250, at *4 (E.D. Mo. Mar. 28, 2024) ("While the ALJ mentions that the medical opinions include a narrative, summary of the evidence, and citations to the record, the Court has reservations as to whether this conclusory statement adequately explains and articulates how the opinions are supported.").

As to the consistency factor, the ALJ writes: "the findings are consistent with the record as a whole, based on the claimant's cardiac history and recent treatment for back pain, discussed above." Tr. 25. This assessment is again more conclusory than explanatory. The ALJ does not specify how Plaintiff's cardiac history and treatment for back pain is consistent with the opinions of the state agent consultants. *See Pipkins v. Kijakazi*, 2022 WL 218898 (E.D. Mo. Jan. 25, 2022) (finding that the ALJ's failure to "explain" and "articulate" the supportability and consistency of medical opinion evidence was reversible error even when the ALJ elsewhere adequately summarized the evidence of record, and it supported the RFC determination); *Martini v. Kijakazi*, 2022 WL 705528, at *5 (E.D. Mo. Mar. 9, 2022) ("[n]o matter the adequacy of the ALJ's general summary of the evidence of record, she nevertheless [must] abide by the Regulation's mandate to 'explain' the supportability [and consistency] of [a medical] opinion in

9

view of such evidence."); *Post v. Kijakazi*, 2021 WL 4355349, at *7 (E.D. Mo. Sept. 24, 2021) (finding ALJ's statement that opinion was "consistent with the claimant medical record, as more fully discussed above" insufficient). Section 416.920c(b) requires more than a conclusory statement as to the supportability and consistency factors so a reviewing court can make a meaningful assessment of a challenge to an ALJ's evaluation of the persuasiveness of various medical opinions.

However, notwithstanding the ALJ's failure to properly analyze supportability and consistency, the ALJ adopted more restrictive limitations than the limitations opined by the state agent consultants, causing the ALJ's deficiencies to be harmless error. The ALJ's addition of a sit and stand option with greater limitations in the Plaintiff's postural maneuvers, *see* Tr. 25, renders any error in the failure to elaborate on persuasiveness harmless. *See, e.g., Berdinka v. O'Malley*, 2024 WL 518919, at *5 (E.D. Mo. Feb. 9, 2024) ("The ALJ ultimately found that [Plaintiff] had greater exertional limitations than found by Dr. Lu—as well as non-exertional limitations—due to his combination of impairments that were not considered by Dr. Lu. As such, any errors in the ALJ's explanation of supportability and consistency with regard to Dr. Lu's opinion did not affect the outcome and were harmless."); *Laramie v. Kijakazi*, 2023 WL 2610215, at *5 (E.D. Mo. Mar. 23, 2023) ("[b]ecause the ALJ found that the record supported *greater* mental limitations than those found by the state agency psychological consultants, any error in the ALJ's failure to elaborate on her analysis of these prior administrative findings was harmless.").

The Court is further persuaded that the ALJ's writing deficiencies are harmless error because the record is devoid of any treating physicians opining that Plaintiff should have more limitations than the light work designation provided by the ALJ. *See Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021) (finding harmless error when "case was not a close call" and

further clarification "would not have significantly swayed the ALJ's decision"). In fact, as the ALJ highlighted, Plaintiff's own treating physician opined that he did not have any functional restrictions related to his cardiac impairments, Tr. 25 (citing 543), and Plaintiff himself declined a referral to a spine surgeon to further treat his back pain, Tr. 24 (citing Tr. 568). An error is harmless when the Plaintiff fails to "provide some indication that the ALJ would have decided differently if the error had not occurred." *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012); *see also Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008) ("[A]n ALJ's failure to adequately explain his factual findings is not a sufficient reason for setting aside an administrative finding where the record supports the overall determination." (internal quotation marks omitted)).

Remand is not required where an error is harmless. *See Lucus v. Saul*, 960 F.3d 1066, 1067 (8th Cir. 2020). It is Plaintiff's burden to show that any error was not harmless, and Plaintiff has failed to meet that burden here. *Byes*, 687 F.3d at 917. Plaintiff has not provided any indication that the ALJ would have decided differently had she more thoroughly articulated the factors. In fact, Plaintiff never argues the state agency consultants' opinions are unsupported by and/or inconsistent with the Record, only that the ALJ failed to explain those factors adequately. Accordingly, any error was harmless.

### B. RFC Evaluation

Plaintiff next argues the RFC is not supported by substantial evidence because the ALJ "relied on the opinions of non-treating, non-examining medical consultants who relied on the records of the treating sources to form an opinion of claimant's RFC." ECF No. 18 at 5. This argument fails because there is no rule preventing an ALJ from finding the opinion of a non-examining state agency consultant more persuasive than that of a treating healthcare provider. *See* 20 C.F.R. § 404.1520c(a). With respect to Plaintiff's claim, which was filed after March 27,

11

2017, the Agency does *not* "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 404.1590c(a); *Guetzloff v. Kijakazi*, 2021 WL 5157487, at *5-6 (W.D. Mo. Nov. 5, 2021) (discussing change in regulations regarding the analysis of medical evidence) (internal citations omitted). In fact, "[t]he new regulations require the ALJ to consider the opinions of state agency medical consultants because they are highly qualified experts in Social Security disability evaluation." *Collins v. Kijakazi*, 2021 WL 3909670, at *4 (W.D. Mo. Aug. 31, 2021). *See also* 20 C.F.R. § 404.1513a(b)(1). Thus, to the extent Plaintiff attempts to invoke the pre-2017's "treating physician rule" by erroneously citing to pre-March 27, 2017 Eighth Circuit cases, his argument fails. Consequently, the ALJ did not err by relying on the opinions of State Agent consultants.

Plaintiff further argues that the RFC determination was not supported by substantial evidence because the ALJ added limitations to the State agency medical opinions without explaining why the additional limitations were warranted. ECF No. 18 at 5-7. Drs. O'Day and Bland opined that Plaintiff could *frequently* climb ramps, stairs, ladders, ropes, and scaffolds, and frequently balance, stoop, kneel, crouch, and crawl, Tr. 69, while the ALJ found Plaintiff should *avoid* climbing ladders, ropes, or scaffolds, kneeling and crawling, and only *occasionally* climb ramps and stairs, stoop, or crouch. Tr 23.

Residual functional capacity is a function-by-function assessment of an individual's ability to do work-related activities based on all the evidence. *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007). The ALJ retains the responsibility of determining a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians, examining physicians, and others, as well as the claimant's own descriptions of her limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). Ultimately, RFC is a medical question, which

must be supported by medical evidence contained in the record. *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). The claimant has the burden to establish RFC. *Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2016). The RFC need only include the limitations supported by the record. *Tindell v. Barnhart*, 444 F.3d 1002, 1007 (8th Cir. 2006). The Court recognizes that an ALJ "may not draw upon his own inferences from medical reports." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). However, the Eighth Circuit has held that the "interpretation of physicians' findings is a factual matter left to the ALJ's authority." *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) (citation omitted).

Contrary to Plaintiff's argument, the ALJ's determination explicitly addressed why the record supported greater physical limitations than what the State agents suggested. The ALJ pointed to the fact that Plaintiff started taking Diclofenac pain medication and maintained an obese weight, which reasonably supported a sit and stand option, with greater postural limitations. Tr. 25. The ALJ concluded that the Plaintiff did not require further restrictions by citing to Plaintiff's modest treatment for back pain, imaging reflecting mild degenerative disc disease, negative stress and echo testing, negative EKG findings, and records showing adequate gait and motor function. *Id.* Moreover, as discussed above, Plaintiff's argument fails because the ALJ adopted *more* restrictive limitations than the limitations opined by Drs. O'Day and Bland. The addition of postural limitations and a sit stand option renders any error in the alleged failure to elaborate on her analysis harmless. *See, e.g.*, *Berdinka*, 2024 WL 518919, at \*5; *Laramie*, 2023 WL 2610215, at \*5; *Grindley*, 9 F.4th at 630.

The Court does not find the ALJ committed error in adding functional limitations to the Plaintiff's RFC. "[T]he ALJ's decision does not need to mirror a single particular medical opinion." *Burkhalter v. Berryhill*, 2017 WL 780792, at \*10 (E.D. Mo. Feb. 28, 2017). The ALJ's decision fell within the available "zone of choice," and the Court cannot disturb that decision

13

merely because it might have reached a different conclusion. *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

### C. "Credibility" Evaluation

Finally, Plaintiff argues the ALJ did not conduct a proper "credibility" evaluation." ECF No. 18 at 7. He argues the decision erroneously lacked a discussion of the *Polaski v. Heckler* factors, other than Plaintiff's activities of daily living, and did not give reasons for discrediting Plaintiff's testimony regarding his disabling symptoms. *Id.* at 9.

Social Security Ruling 16-3p[1] eliminated the word "credibility" from the analysis of subjective complaints, replacing it with "consistency" of a claimant's allegations with other evidence. *See* SSR 16-3p, 2017 WL 5180304 at *2 ("[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term."). This Rule incorporates the familiar factors from *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) which previously guided an ALJ's analysis of subjective complaints, including: objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency and intensity of the symptoms (*i.e.*, pain); (3) precipitating and aggravating factors; (4) the dosage, effectiveness and side effects of medication; and (5) any functional restrictions. *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). If the evidence as a whole "undermines" or "cast[s] doubt on" a claimant's testimony, an ALJ may decline to credit a claimant's subjective complaints. *Id.* If the ALJ explicitly discredits a claimant's subjective complaints and gives good reasons, the Eighth Circuit has held it will defer to the ALJ's judgment, even if the ALJ does not cite to *Polaski* or

---

[1] The revised Ruling became effective on March 27, 2017. It applies to determinations or decisions made by the Social Security Administration on or after March 28, 2016.

14

discuss every factor in depth. *See Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007); *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004).

Contrary to Plaintiff's argument, the ALJ explicitly confirmed in his decision that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p," which are the *Polaski* factors. *See* Tr. 23. The ALJ observed that Plaintiff "endorsed an ability to perform household chores, cook, drive, shop, along with independent completion of personal care tasks." Tr. 26. While the ALJ acknowledged that Plaintiff rated his pain as a "10," he considered the fact that he did have a gym membership and was encouraged by his treating physician to exercise. Tr. 23-24. He found it notable that Plaintiff declined a referral to a spine surgeon despite complaining of progression in his neck and back pain. Tr. 24. Subsequent to obtaining pain management services, Plaintiff reported some improvement. Tr. 25. The ALJ indicated that his most recent treatment records showed he was not in any acute distress without abnormalities in his musculoskeletal system. *Id.* It is clear from the ALJ's determination that he did consider the required SSA factors in evaluating the symptoms.

While Plaintiff may disagree with the ALJ's conclusion, this Court does not substitute its own judgment for that of the ALJ, even if different conclusions could be drawn from the evidence, and even if this Court may have reached a different outcome. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). "[The Court's] task is not to reweigh the evidence, and [the Court] may not reverse the Commissioner of the Social Security Administration's decision merely because substantial evidence would have supported an opposite conclusion or merely because [the Court] would have decided the case differently." *Harwood v. Apfel*, 186 F.3d 1039, 4042 (8th Cir. 1999) (emphasis added).

For the foregoing reasons, the Court finds that the ALJ's opinion is supported by substantial evidence on the record as a whole and contains no legal errors.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff Charles M.'s Complaint is **DISMISSED, with prejudice**. A separate judgment will accompany this Memorandum and Order.

So Ordered this 15th day of July, 2026.

_____
STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE